PIERCE, Judge.
This is an appeal from a conviction of the offense of uttering a forged check.
William E. Bradley was informed against in the Pinellas County Circuit Court for having unlawfully uttered and published a certain forged bank check to the Bay Drive-In in Clearwater. The check in question is set forth in the information as being dated July 11, 1966, drawn on the Bank of Clearwater, in the amount of $20.00, payable to cash, and signed “William J. Bradley III”. Upon plea of not guilty, the cause proceeded to trial, resulting in a verdict of guilt by the jury. Bradley contends as grounds for reversal here that the judgment of conviction was infected with reversible error upon two grounds: (1) an alleged fatal variance between the name of the maker on the check introduced at the trial, and the name of the maker alleged in the information, and (2) violation of Bradley’s Constitutional right in the manner of his being identified in a police line-up prior to trial. We will consider these matters in order.
(1) The Variance.
The information charged that the maker of the check involved was “William J. Bradley III”. At the trial a check was received in evidence over objection which conforms identically in every particular with the check set forth in the information, except that the signature on the check in evidence bore the middle initial which was not readily decipherable as a capital “J” or a capital “T”. In other words, on the check itself it was impossible, for all practicable purposes, to tell whether the middle initial of the maker was intended to be a “J” or a "T".
Counsel for Bradley at the trial contended that the middle initial on the check in evidence was rather clearly a “T” and called attention to the fact that the paper slip attached by the bank to the check when it was returned unpaid referred to the check as having been drawn by “William T. Bradley III”. The trial Judge observed that the middle initial on the signature and the “T” in the word “Twenty” to his “uneducated eye” were “vastly different” and that “it looks as though it could be a ‘J’ to me”. The Assistant State Attorney at the trial contended it would be a question of fact for the jury to determine as to whether a variance in fact existed as to the middle initial. A bank employee testified that there was no account in the bank for a William Bradley, or a William Bradley III, or a William Bradley with any initials; also that the bank had no account corresponding to the account number written on the check. The interpretation that the middle initial was a “T” was made by a bank employee, but a bank official testified it could be interpreted as either a “T” or a “J”.
The check was cashed at the Drive-In restaurant by defendant Bradley, who was identified as the person who presented it and received the full twenty dollars in cash for it. At the time he represented himself as being a “Dr. Bradley from Mease Hospital in Dunedin”. When the Drive-In owner told Bradley he thought he knew Dr. Bradley from the hospital, Bradley replied there were “two Dr. Bradleys in Mease Hospital”. Dr. William J. Bradley, III, a medical doctor attached to the Mease Hospital, testified he was the only Dr. Bradley connected with the institution and disavowed having' ever seen the check before or that he had signed it or authorized anyone else to sign the name to the check or that he had ever seen the defendant Bradley before.
Under the foregoing circumstances, it is claimed there was a fatal variance between the name on the check and the name used in the information, which would vitiate the conviction. Such contention, in the light of the record, is untenable.
*659 In the first place, there was not necessarily any variance at all, fatal or otherwise. The consensus of observations of various persons connected with the trial, including the trial Judge, was that it could have been either “J” or “T”. In such situation it would clearly be a case for the jury —if the point was of any consequence.
In the second place, assuming there was a variance, it was harmless and without substance. Bradley did not deny he wrote out the check, personally cashed it, and received the full face value in cash for it. He did not deny he represented falsely that there were two Dr. Bradleys at Mease Hospital. He did not deny he had no account or account number at the Bank of Clearwater. He did not even testify at all.
He was charged with uttering a forged check. He could have also been charged and convicted of forgery of the check because he wrote it out in the presence of a Drive-In employee, who then referred him to the owner. Both the owner and employee so testified. They both identified the check in evidence as being the check he wrote out and cashed. So there could have been no doubt or dispute that the check in evidence was the one he uttered falsely at the Drive-In. And there could be no question as to the check in evidence being the one described in the information, because every mark, symbol, printing, and writing thereon was identical, except the middle initial of the maker, and that could as readily have been interpreted as identical also.
Lastly, even if William T. Bradley, III, had been a living person whose name had been stated in the information to be William J. Bradley, III, thus producing a variance between the allegata and the pro-bata, yet it would not have been fatal to a conviction. See Tootle v. State, 1930, 100 Fla. 1248, 130 So. 912; Branch v. State, 1927, 94 Fla. 286, 115 So. 143; and 42 C.J.S. Indictments and Informations § 265, p. 1289.
In Tootle, the Supreme Court upheld a manslaughter conviction, even though the name of the victim, before trial and without consent or knowledge of the defendant Tootle, had been changed from “Bernard Todd” to “Verner Potts”, because it did not appear that the defendant was “thereby prejudiced in any legal right”.
In Branch, the Supreme Court upheld a conviction for assault with intent to commit murder, where the information alleged the name of the person assaulted to be “Harry C. Beaty” while the evidence at the trial showed his name to be “Henry C. Beaty”. The Court held that it was a question of identity, and that the only essential requirement is “that the record be in such shape as to inform the defendant of the charge against him and to protect him against another prosecution for the same offense”.
42 C.J.S. Indictments and Informations § 265, p. 1289, states “that a variance between a middle * * * initial alleged and proved is not material, and that a middle initial * * * if alleged, need not be proved as alleged”.
There was no fatal variance.
(2) The Line-Up.
The State produced evidence that Bradley was identified as the person cashing the check by a waitress and also by the owner of the Drive-In at separate so-called lineups at the police station prior to trial, when Bradley was without counsel. The record indicates that such confrontations with Bradley were not in the process of an actual “line-up” of several persons including Bradley, but consisted simply of bringing the witnesses into the presence of Bradley where they professed to identify him, having previously seen pictures of Bradley produced to the witnesses by the officers. It is contended that such identification procedure violated the fair-play rights of Bradley and also violated his Constitutional rights because of absence of counsel.
*660 As to the procedure employed by the officers, there is no circumscribed or legally mandatory formula laid down to he followed. This is something that is left to the conscience and judgment of the officers, subject always to the determination by the jury of how much weight and efficacy will be given to the alleged identification under the methods employed. Obviously, the facts in any two cases would probably not be identical or even similar, depending upon the time, place, persons involved, opportunity, etc. We cannot say as a matter of law that the modus operandi followed here was so repugnant to the concepts of fair treatment as to vitiate the conviction or even to render the evidence inadmissible.
As to such identification being made in the absence of counsel, a more serious question is presented. On June 12, 1967, the U. S. Supreme Court decided the cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, which held that such police line-up confrontations between the accused and prospective State witnesses, outside the presence of counsel for the accused, violated the accused’s Constitutional right.
But thereafter, in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the high Court held that the exclusionary rule so expounded in Wade and Gilbert operated prospectively only and not retroactively, and therefore would not apply to any criminal trials held prior to June 12, 1967, the date of the latter decisions.
The trial in the case sub judice was held on May 17, 1967, prior to the effective date of Wade and Gilbert and therefore was not subject to such cases. Since the identification procedure complained of was not per se unconstitutional on May 17, 1967, and, as before stated, we find therein nothing otherwise prejudicial to Bradley, we must and do hold the testimony to have been not improperly admitted.
The judgment appealed from is therefore—
Affirmed.
ALLEN, Acting C. J., and HOBSON, J., concur.